■ DANIEL O'CONNOR, Appellant, v INCORPORATED VILLAGE OF PORT JEFFERSON, Respondent. — In a negligence action to recover damages for personal injuries, plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Underwood, J.), entered April 19, 1983, which, after a jury trial, was in favor of defendant.

Judgment reversed, on the law and as a matter of discretion, and new trial granted, with costs to abide the event.

Plaintiff was severely injured when he dove into a shallow portion of a lagoon operated by the defendant. For the reasons outlined below, a new trial is warranted.

First, the following statement, contained in the discharge summary of the hospital in which plaintiff was treated, was read to the jury: "The patient, according to his girlfriend Maureen Henderson, said that they were on the beach, whereupon he had a six-pack of beer and four 10 milligram Valium tablets, and following this went over to the life guard stand while the life guards were patrolling the beach and, against his friend's advice, moved the life guard stand to the edge of the water at the

beach and climbed up on the life guard stand and dove into shallow water at the edge of a lagoon on the Long Island Sound Beach at Port Jefferson."

This is double hearsay in which the hearsay declarant (Ms. Henderson) reported another extra-judicial statement (allegedly made by plaintiff) to the staff of the hospital. Ms. Henderson's statement was made approximately eight months after the accident; the time of the alleged statement by plaintiff to Ms. Henderson is not clear. Even if the plaintiff's statement were admissible under an exception to the hearsay rule, Ms. Henderson's statement would still not be admissible. She had no duty to report plaintiff's version of the accident to the hospital (*Matter of Leon RR,* 48 NY2d 117) and, furthermore, the contents of her statement have no relevance to the diagnosis or treatment of plaintiff's condition (*Williams v Alexander,* 309 NY 283; *Levine v Shell Oil Co.,* 35 AD2d 575, mod on other grounds 28 NY2d 205). Therefore, the business record exception to the hearsay rule (CPLR 4518) does not apply. This error was compounded when defense counsel, in summation, distorted the evidence to the extent that he made it appear that the statement, rather than being a statement by plaintiff reported to the hospital by Henderson, was instead a statement by Henderson herself. Counsel argued that "Maureen Henderson, the patient's girlfriend, said that Danny had a six pack of beer and four 10-milligram Valium tablets".

Further incompetent evidence was admitted regarding plaintiff's alleged drug or alcohol abuse. The contents of an "Emergency ambulance report, Nassau/Suffolk Region" was read into evidence. It appears that this report was prepared by an unspecified member of a volunteer ambulance corps. The report contained the notation "A.O.B." and the statement "Patient took approximately three Valium". ("A.O.B.", in the opinion of a physician who witnessed the accident and who was called to testify, signified "alcohol on breath".) This document was received into evidence without any testimony to establish the document's authenticity, or that it was, in fact, a document prepared in the ordinary course of business of the ambulance service (CPLR 4518, subd [a]). It was, therefore, inadmissible hearsay (*Blair v Martin's,* 78 AD2d 895; *Sabatino v Turf House,* 76 AD2d 945). Nor does it appear on the basis of the record before this court that what was represented to the trial court to be a volunteer ambulance service can be characterized as a department or bureau of a municipal corporation or the State, or that the report was certified or authenticated by the "head" of such department or bureau or by "an employee delegated for

that purpose", so as to dispense with the need for an authenticating witness (CPLR 4518, subd [c]; 2306, 2307; *Liberto v Worcester Mut. Ins. Co.,* 87 AD2d 477, 479; see Public Health Law, § 3001, subd 3 [voluntary ambulance service] and subd 4 [municipal ambulance service]).

Apart from these documents, there was no other evidence of drug abuse on the part of the plaintiff, and little evidence of consumption of alcohol. The summation of defense counsel hammered home the plaintiff's alleged drug and alcohol abuse, based on this incompetent evidence.

Finally, the following statement was made by the attorney for the defendant in his summation:

"I have been in this business for more than 30 years, and when a lawyer hears of a boy who was injured the way Danny was injured and he knows that if he can bring a suit against somebody, he can bring Danny into court in a wheelchair to sit through the whole thing, and it's going to work on the human, inescapable human feelings, I have no question in my mind you are all human beings, and you must be affected, as I have been affected and everybody in the courtroom by having Danny here to hear all this and to sit through all this.

"And then the lawyer has a problem. Whom can I sue, whom can I blame this on and who has a deep pocket who can pay if we can only get to the jury? Because if we show Danny long enough, day after day, the jury is going to say, we can't send him away with nothing."

Needless to say, this remark is completely outside the realm of fair comment on the evidence.

The foregoing errors and misconduct possibly affected the jury's verdict, and, accordingly, the plaintiff was deprived of a fair trial. Lazer, J. P., O'Connor, Rubin and Boyers, JJ., concur.