| **U.S. Bank N.A. v Ingber** |
|:---:|
| 2026 NY Slip Op 30998(U) |
| March 16, 2026 |
| Supreme Court, Kings County |
| Docket Number: Index No. 510361/2016 |
| Judge: Menachem M. Mirocznik |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At IAS Part FRP5 of the Supreme Court
of the State of New York, held in and for
the County of Kings, at the Courthouse
located at 360 Adams Street, Brooklyn,
NY 11201, on the 16th of March 2026

PRESENT: HON. MENACHEM M. MIROCZNIK
JUSTICE OF THE SUPREME COURT

---

U.S. BANK NATIONAL ASSOCIATION,
SUCCESSOR-IN-INTEREST TO BANK OF
AMERICA, N.A., SUCCESSOR BY MERGER TO
LASALLE BANK, N.A., AS TRUSTEE FOR
STRUCTURED ASSET INVESTMENT LOAN
TRUST, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2004-11,

Plaintiff,

-against-

LEA INGBER NEW YORK CITY PARKING
VIOLATIONS BUREAU CAPITAL ONE BANK
(USA), N.A. THE BOARD OF MANAGERS OF THE
BOTEY YISROEL CONDOMINIUM "JANE DOE"
"JOHN DOE" "JOHN DOE",

Defendants.

**Index No. 510361/2016**

**Decision, Order and Judgment**
**(Motion Seq. 6 and 7)**

---

| Papers | Numbered |
|---|---|
| Notice of Motion | NYSCEF Doc. 99-122 |
| Notice of Cross-Motion | NYSCEF Doc. 123-124 |
| Opposition to Cross-Motion/Reply | NYSCEF Doc. 125-126 |
| Reply to Cross-Motion | NYSCEF Doc. 127-130 |

Upon the foregoing papers, the motion(s) is/are determined in accordance with this Decision, Order and Judgment as follows:

## Relevant Procedural History

This close to ten-year-old action was commenced on June 20, 2016, seeking to foreclose a mortgage (the "mortgage") executed by defendant Lea Ingber (the "defendant") encumbering the property known as 470 Malbone Street, Brooklyn, NY 11225 (the "property").

Defendant failed to timely appear or answer the complaint.

On May 10, 2018, the Court granted plaintiff's motion for a default judgment and order of reference and denied defendant's cross-motion to vacate her default and submit an answer.

[* 1]

On April 16, 2019, the Court denied defendant's motion to reargue the May 10, 2018 order.

On May 12, 2025, the Court denied plaintiff's first motion to confirm the referee's report and for a judgment of foreclosure and sale and denied defendant's cross-motion seeking dismissal.

Plaintiff now moves to confirm the referees report and for a judgment of foreclosure and sale. Plaintiff contends that the report is substantially supported by the record and therefore the Court should confirm same and issue a judgment of foreclosure and sale. The referee's report primarily relies on the affirmation of Juliana Thurab, ("Ms. Thurab" or Thurab Affirmation") Vice President of PHH Mortgage Corporation ("PHH"), as purported attorney in fact for NewRez. LLC ("NewRez"), which is Plaintiff's purported attorney in fact.

Defendant opposes the motion and cross-moves to reject the referees report and for entry of a judgment awarding only nominal damages in the amount of $1.00 which also directs that the lien, judgment, and notice of pendency be extinguished upon payment of the $1.00 judgment of foreclosure and sale. Defendant argues that Plaintiff failed to prove its damages with admissible evidence lacking sufficient foundation. Specifically, defendant argues that plaintiff failed to demonstrate its affiant's authority inasmuch as the powers of attorney are dependent on unproduced agreements and is otherwise deficient. Defendant further argues that Ms. Thurab failed to lay sufficient foundation for the admissibility of the records attached to her affidavit inasmuch as she failed to attest to personal knowledge of her employers record keeping practices, provides insufficient details as to the alleged record keeping practices, failed to allege the records are accurate representations of the electronic records, failed to allege that the entrant and informant were under a business duty accurately report and enter information and does not provide foundation for each exhibit, merely making general conclusory assertions without reference to any specific exhibit. -Defendant contends that upon rejection of the report the Court should enter a judgment for nominal damages. In the alternative defendant argues the action should be dismissed pursuant Kings County Supreme Court Uniform Civil Term Rules. Part F, Rule 7 (formerly denominated as Rule 8)

In Opposition to the cross-motion and in further support of the motion. Plaintiff argues that Defendant's cross-motion must be denied because the referees report is substantially supported by the record and business records were attached to the Thurab Affirmation. Plaintiff further argues defendant is in default, that defendant's challenges rely solely on attorney argument without personal knowledge, that the cross-motion is barred by the law of the case doctrine and that the referee properly relied on plaintiff's affidavit of merit and supporting loan documents to compute the amount due and that Ms. Thurab alleged sufficient personal knowledge and is "inherently trustworthy. As a reasonable excuse for failing to comply with Rule 7, plaintiff contends that it opposed defendant's motion to reargue and alleged settlement discussions.

In reply to plaintiff's opposition and in further support of the cross-motion, Defendant argues that even a defaulting defendant retains the right to contest damages, that plaintiff does not respond to any of defendants admissibility arguments, that the burden of establishing damages rests with the plaintiff and defendant need not submit contrary evidence, that a default does not admit plaintiff's contentions on damages which are not traversable, that by failing to address defendants arguments it concedes same and any one of the arguments advanced by defendant is dispositive. Specifically, defendant contends that plaintiff failed to address defendants challenge

[* 2]

to its affiants authority, failed to demonstrate the subject mortgage is included within the alleged trust, failed to address its affiants failure to provide specific foundation for each of alleged records, failed to address the failure to allege the records were created by someone under a business duty, failed to address the failure to allege the records are accurate representations of the electronic records, and does not contest the contention that if the referees report is rejected entry of judgment for nominal damages is appropriate. Defendant further argues that the law of the case doctrine is inapplicable, only applies to legal determinations necessarily resolved on the merits and none of the issues were addressed or ruled upon in connection with the prior motion practice.

## Discussion

"The report of a referee should be confirmed whenever the findings are substantially supported by the record, and the referee has clearly defined the issues and resolved matters of credibility…The referee's findings and recommendations are advisory only and have no binding effect on the court, which remains the ultimate arbiter of the dispute." *Citimortgage, Inc. v Kidd,* 148 AD3d 767 [2d Dept 2017][citations omitted]

A plaintiff seeking a judgment of foreclosure and sale bears the burden of submitting evidence in admissible form of the amount due under the note and mortgage. See *TLOA Mtge., LLC v 109-08 N. Blvd, LLC,* 241 AD3d 963 [2d Dept 2025][findings with respect to the amount due to foreclosing plaintiff cannot be supported by inadmissible hearsay; confirmation of referee's report of amount due and judgment of foreclosure and sale denied]; *Deutsche Bank Natl. Tr. Co. v Light,* 235 AD3d 946 [2d Dept 2025]), the same burden all other civil plaintiffs face. See generally *Berley Industries, Inc. v City of New York,* 45 NY2d 683 [1978]["It is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered."]; *Lewin v Levine,* 146 AD3d 768 [2d Dept 2017]["It is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered, must demonstrate actual damages, and must lay a basis for a reasonable estimate of the extent of the harm."]

A hearing for the purposes of computing the amount due under the note and mortgage— whether conducted before a referee or the court—is the procedural equivalent of an inquest on damages. See e.g. *Wilmington Sav. Fund Socy., FSB v Moriarty-Gentile,* 190 AD3d 890 [2d Dept 2021]; "At an inquest, the plaintiff bears the burden of setting forth a prima facie case as to [the amount due on the mortgage."] *Wells Fargo Bank, N.A. v Bajnauth,* 241 AD3d 759 [2d Dept 2025], quoting *Bobbo Prop. Mgt., Inc. v Faulkner,* 235 AD3d 615 [2d Dept 2024]; See also *HSBC v Cherestal,* 2025 NY Slip Op 30602[U][Sup Ct Kings County Jan. 8, 2025][Hon. Genine D. Edwards, J.S.C.])

Absent sufficient admissible evidentiary support, the Court is bound to find that "the referee's findings with respect to the total amount due upon the mortgage [a]re not substantially supported by the record" and must deny a request for its confirmation. *Wells Fargo Bank, N.A. v Campbell,* 196 AD3d 726, 727 [2d Dept 2021]) citing *U.S. Ro/ III Legal Tit. Trust 2015-1 v John,* 189 AD3d 1645 [2d Dept. 2020]

Pursuant to CPLR § 4403, any party may move to confirm or reject a referee's report, and the Court must reject a referee's report when it is not supported by admissible evidence. See *HSBC*

[* 3]

*Bank USA, N.A. v Cherestal*, 178 AD3d 680 [2d Dept 2019]; *JNG Constr., Ltd. v Roussopoulos*, 170 AD3d 1136 [2d Dept 2019] [To the extent the referee's report was not supported by admissible evidence, it "should…have been rejected."]

Initially, plaintiff's contention that a party in default may not challenge the amounts due is without merit. While a party in default admits traversable allegations in the complaint, the amount quantum of damages is always subject to challenge. See *Rokina Optical Co., Inc. v Camera King, Inc.*, 60 NY2d 728, 730-731 [1984][a defaulting defendant "does not admit the plaintiff's conclusion as to damages…plaintiff's real damages [] cannot be established by the mere fact of the defendant's default"]; *Wilmington Sav. Fund Socy., FSB v Moriarty-Gentile*, 190 AD3d 890, 892 [2d Dept 2021]["The fact that the defendants defaulted in appearing did not mean that they were precluded from contesting the amount owed."]; *Wells Fargo Bank, N.A. v Campbell*, 196 AD3d 726 [2d Dept 2021]["The fact that the defendant defaulted in appearing did not mean that she was precluded from contesting the amount owed."]; *Bank of Am., N.A. v McAlpin*, 171 AD3d 999, 1000 [2d Dept 2019]["Contrary to the Supreme Court's determination, the defendant was not precluded from seeking relief under Rule 8 by the denial of that branch of his motion which was to vacate his default in appearing in the action."]

Plaintiff's contention that relief or challenge to the referee's report as being barred by the law of the case doctrine is equally meritless.

"The doctrine of the law of the case is a rule of practice, an articulation of sound policy that, when an issue is once judicially determined, that should be the end of the matter as far as Judges and courts of co-ordinate jurisdiction are concerned…Such a rule is essential to an orderly and seemly administration of justice in a court composed of several judges…" *U.S. Bank N.A. v Tenenbaum*, 228 AD3d 696 [2d Dept 2024]; *Bank of New York Mellon v Singh*, 205 AD3d 866, 867 [2d Dept 2022]["The doctrine of the law of the case seeks to prevent relitigation of issues of law that have already been determined at an earlier stage of the proceeding."]

The doctrine of "law of the case rests on a foundation that further distinguishes it from issue and claim preclusion. Whereas the latter concepts are rigid rules of limitation, law of the case is a judicially crafted policy that "expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limit to their power…As such, law of the case is necessarily "amorphous" in that it "directs a court's discretion," but does not restrict its authority." *People v Evans*, 94 NY2d 499, 503 [2000]

"The law of the case doctrine applies only to legal determinations that were necessarily resolved on the merits in a prior decision…and to the same questions presented in the same case" *U.S. Bank N.A. v Moss*, 186 AD3d 1753, 1753 [2d Dept 2020][internal citations and quotation marks omitted]; See also *Deutsche Bank Natl. Tr. Co. v Bruno*, 239 AD3d 827, 829 [2d Dept 2025]["The law of the case doctrine applies only to legal determinations that were necessarily resolved on the merits in a prior decision and to the same questions presented in the same case"];

Application of the doctrine requires that the issue have been "actually", "directly" and "expressly" decided in the prior ruling "on the merits" and does not apply to "evidentiary" type rulings . See *Ferolito v Vultaggio*, 115 AD3d 541, 542 [1st Dept 2014]["Mechanically the law of the case doctrine is similar to collateral estoppel, in that both require that an issue have been

[* 4]

4 of 13

*actually decided* in order to pose a bar in a later proceeding."][emphasis added]; *Brown v State*, 250 AD2d 314, 320 [3d Dept 1998][emphasis added]["It applies "[w]here a court *directly passes upon an issue* which is necessarily involved in the final determination on the merits"][emphasis added]; *Holt v Tioga County*, 95 AD2d 934, 935 [3d Dept 1983]["we note that since neither we nor the Court of Appeals *expressly addressed* these particular [] claims earlier, the doctrine of law of the case does not hinder our consideration of them now"][emphasis added]; *People v Evans*, 94 NY2d 499, 504 [2000]["an "evidentiary" type ruling will normally not be binding"]

Contrary to plaintiff's contentions, a finding of liability upon a default judgment and order of reference makes no finding on damages. In fact, the opposite is true, it expressly does not make any finding on damages and refers the matter to a referee to compute. The Court makes no determination as to when the default occurred, whether any payments were made before or after the default and whether the plaintiff is entitled to recover any of the specific complained of amounts. See e.g. *HSBC Mtge. Corp. USA v Tehrani*, 229 AD3d 772, 777-78 [2d Dept 2024]["Here, the referee's findings with respect to the total amount due on the note were not substantially supported by the record, inasmuch as the referee's findings were premised upon a business record that covered the defendant's payment history beginning only in January 2015, whereas the referee's computation was based on the defendant having defaulted in October 2009."]; *Citimortgage, Inc. v Rooney*, 242 AD3d 695, 697 [2d Dept 2025]["business records themselves were insufficient to establish the amounts attested to in the Benning affidavit, as they did not include the payment history with a monthly accounting of the loan"][citations omitted] [1]

Here, the contentions raised by defendants were never presented to the Court, were never "actually", "directly" and "expressly" passed upon by the Court on the merits and are evidentiary in nature. Therefore, the law of the case doctrine is inapplicable.

Moreover, defendant is correct that Plaintiff fails to address—at all—several of Defendant's arguments demonstrating that Plaintiff's proof of the amount allegedly due is inadmissible. Under settled appellate authority, arguments raised by the movant but not addressed in opposition are deemed conceded. *See Wilmington Sav. Fund Socy., FSB v Cuong Vi Cao*, 242 AD3d 1045, 1047 [2d Dept 2025]["In opposition to the plaintiff's motion, the defendant failed to address the plaintiff's contention...Therefore, the defendant, in effect, conceded that no issue of fact existed in that regard"]; *McNamee Const. Corp. v City of New Rochelle*, 29 AD3d 544 [2d Dept 2006]["The Supreme Court also erred in failing to dismiss the third-party plaintiff's claim for contribution/common law indemnification, as the third-party plaintiff failed to address or controvert the third-party defendants' arguments in this regard."];See also *Kuehne & Nagel, Inc. v Baiden*, 36 NY2d 539, 544 [1975]["Facts appearing in the movant's papers which the opposing party does not controvert, may be deemed to be admitted...and where there are cross motions...in the absence of either party challenging the verity of the alleged facts, as is true in the instant case,

---

[1] Thus, the cases discussing certain claims on damages being a matter of simple arithmetic are inapposite as they are only applicable when the elements necessary for the formula and the calculation are supplied by admissible evidence in the record. See e.g. *Simon v Electrospace Corp.*, 28 NY2d 136 [1971]["there must be a redetermination of damages, *but on a formula, the elements of which are supplied by the record*, thus requiring no more than a simple arithmetic computation."][emphasis added]. The requirement that a plaintiff produce evidence in admissible form for all the elements necessary to demonstrate damages is so elementary it scarcely requires elaboration. Here, essential elements necessary for a determination on damages are not in the record and therefore must be supplied with competent and admissible evidence.

[* 5]

there is, in effect, a concession that no question of fact exists"]; *Firth v State*, 287 AD2d 771, 772 [3d Dept 2001]["It is well settled that the consequence of failing to respond to a fact set forth in motion papers is a deemed admission"], *affd*, 98 NY2d 365 [2002]

In any case, defendant is correct that the referee's report is not substantially supported by the record and must be rejected. The referee's report relies entirely on the Thurab Affirmation whose authority has not been established and whose testimony and annexed documents are inadmissible hearsay.

First, the powers of attorney are insufficient to demonstrate authority to act for plaintiff. Annexed to the Thurab Affirmation are a power of attorney from US Bank, NA to NewRez dated July 2, 2019, and a power of attorney from NewRez to PHH dated July 11, 2019, which was allegedly executed pursuant to July 2, 2019, power of attorney. However, the July 2, 2019 power of attorney expressly provides that documents "may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements" and further provides that "Servicer has the power to execute additional limited powers of attorney and delegate the authority…under the applicable servicing agreements for the Trusts." Here, plaintiff did not proffer the submit the subject servicing agreements. Therefore, plaintiff failed to demonstrate that NewRez had authority to execute a power of attorney in favor of PHH or that Ms. Thurab has the requisite authority to act on behalf of plaintiff .

Therefore, the referees report is not substantially supported by the record and plaintiff's motion to confirm same and for judgment of foreclosure is denied. See *U.S. Bank N.A. v Tesoriero*, 204 AD3d 1066 [2d Dept 2022]["the limited power of attorney submitted…restricted and conditioned its authority based on the terms of other agreements which were not provided by the plaintiff. Thus, the limited power of attorney was insufficient to demonstrate that Nationstar possessed the authority to act on behalf of the plaintiff"]; See also See *HSBC Bank USA, N.A. v. Betts*, 67 Ad3d 735 [2d Dept 2009]; *Citibank, N.A. v Herman*, 215 AD3d 626 [2d Dept 2023]; *US Bank N.A. v Cusati*, 185 AD3d 870 [2d Dept 2020].

Second, the Thurab Affirmation and the proffered evidence are inadmissible and therefore, the referee's report is not substantially supported by the record.

"[T]o establish a foundation for the admission of a business record, the proponent of the record must satisfy the requirements identified in the statute (*see* CPLR 4518[a]). *First*, the proponent must establish that the record be made in the regular course of business—essentially, that it reflect a routine, regularly conducted business activity, and that it be needed and relied on in the performance of functions of the business.... *Second*, the proponent must also demonstrate that it be the regular course of such business to make the record … essentially, that the record be made pursuant to established procedures for the routine, habitual, systematic making of such a record…*Third*, the proponent must establish that the record be made at or about the time of the event being recorded—essentially, that recollection be fairly accurate and the habit or routine of making the entries assured." *Bank of New York Mellon v Gordon*, 171 AD3d 197 [2d Dept 2019][internal citations and quotation marks omitted and emphasis added]

"In addition to these statutory requirements, the Court of Appeals has held that "[u]nless some other hearsay exception is available, admission may only be granted where it is demonstrated

[* 6]

that the informant has personal knowledge of the act, event or condition and he [or she] is under a business duty to report it to the entrant" *Id.* citing *Matter of Leon RR*, 48 NY2d 117 [1979].

Lastly, if the proffered record is an "electronic record", the proponent must also provide sufficient information to establish that the proffered record "is a true and accurate representation" of the electronic record. *See* CPLR 4518[a]; See e.g. *Palisades Collection, LLC v Kedik*, 67 AD3d 1329 [4th Dept 2009]; *Speirs v Not Fade Away Tie Dye Co.*, 236 AD2d 531, 531 [2d Dept 1997].

First, Ms. Thurab fails to attest to personal knowledge of plaintiff's record keeping practices and procedures.

The law is well settled that "[a] proper foundation for the admission of a business record must be provided by someone with *personal* knowledge of the maker's business practices and procedures" *Ingber v Martinez*, 191 AD3d 959 [2d Dept 2021][emphasis added], quoting *Citibank, N.A. v Cabrera*, 130 AD3d 861 [2d Dept 2015]; See also *Fed. Natl. Mtge. Assn. v Marlin*, 168 AD3d 679 [2d Dept 2019]["When a party relies upon the business records exception to the hearsay rule in attempting to establish its prima facie case, "[a] proper foundation for the admission of a business record must be provided by someone with personal knowledge of the maker's business practices and procedures"]

Here, Ms. Thurab does not aver that she was *personally* familiar with PHH's record keeping practices and procedures. Rather, she vaguely claims that she is "familiar with the business records maintained by PHH for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies" and are "[b]ased on my training and my general knowledge of the processes by which PHH's Servicing Records are created and maintained".

"Since [Ms. Thurab] failed to attest that she was personally familiar with the record-keeping practices and procedures of the entity that generated the subject business records, she failed to demonstrate that the records relied upon in her affidavit were admissible under the business records exception to the hearsay rule." *HSBC Bank USA, N.A. v Williams*, 177 AD3d 950 [2d Dept 2019]; *IndyMac Fed. Bank, FSB v Vantassell*, 187 AD3d 725, 727 [2d Dept 2020]["Here, [the Thurab Affirmation] was insufficient to establish a proper foundation for the admission of a business record pursuant to CPLR 4518(a), because she failed to attest that she was personally familiar with the record-keeping practices and procedures of her employer, [PHH], the entity that generated the subject business records. Accordingly, she failed to demonstrate that the records relied upon in her affidavit were admissible under the business records exception to the hearsay rule...Thus, [the Thurab Affirmation], upon which the referee relied, constituted inadmissible hearsay and lacked probative value" on the issue of the amount due and owing to the plaintiff, including the amount of interest due for the relevant period...and the Supreme Court erred in confirming the report."][internal citations and quotation marks omitted]

Second, Ms. Thurab fails to lay "a factual foundation sufficient to demonstrate [the proffered exhibits'] admissibility as business records." *U.S. Bank N.A. v Kaur*, 177 AD3d 1016 [2d Dept 2019]["The documents comprising the plaintiff's exhibit 5 should not have been admitted into evidence because they were not properly certified or authenticated, and were not supported by a factual foundation sufficient to demonstrate their admissibility as business records"]; *Werner v City of New York*, 135 AD3d 740 [2d Dept 2016]["Those printouts were not in admissible form,

[* 7]

since they were not certified or authenticated, and were not supported by a factual foundation sufficient to demonstrate their admissibility as business records."]; *Dyer v 930 Flushing, LLC*, 118 AD3d 742 [2d Dept 2014]["However, the computer printout submitted…was inadmissible, since it was not certified or authenticated…and it was not supported by a factual foundation sufficient to demonstrate its admissibility as a business record"]

"Generally, business records are not self-proving, and determinations of their admissibility often require testimony of qualified witnesses familiar with how the documents are created." *Montes v New York City Tr. Auth.*, 46 AD3d 121 [1st Dept 2007]

"In order for a piece of evidence to be of probative value, there must be proof that it is what its proponent says it is. The requirement of authentication is thus a condition precedent to admitting evidence" *People v Price*, 29 NY3d 472, 476 [2017]

While Ms. Thurab sets forth general business procedures, she fails to allege that the documents attached to her affirmation were created and maintained in accordance with such general procedures, or that each exhibit to her affirmation is a record of a contemporaneous event, used or relied upon in the ordinary course of business, let alone substantiate such an allegation with specific facts. CPLR 4518[a] is not satisfied by merely establishing that it was the regular course of business to generally make records or writings. It must be established that each specific exhibit "was made in the regular course of business," that is, the record was created in accordance with the established business practice, at or about the time of the transaction. Conclusory assertions are insufficient to enter judgment.

There can be no question that a plaintiff would fail to lay a business records foundation at trial merely by describing its general business practices without disclosing the specific procedures relevant to each of proffered records separately and whether each of those records were created and maintained in accordance with such procedures.

Here, the Thurab Affirmation is silent regarding the specific foundational requirements for each exhibit and there is no admissible evidence to find that any of exhibits were made in the ordinary course of business. The recitation of some conclusory phrases in an opening paragraph does not satisfy the requirement to lay foundation for each exhibit or each part thereof. *See e.g. Vermont Com'r of Banking and Ins. v Welbilt Corp.*, 133 AD2d 396 [2d Dept 1987][rejecting evidence that did not have individualized foundation]; See also *Scottsdale Ins. Co. v Casino Dev. Group, Inc.*, 216 AD3d 602 [1st Dept 2023]; *Unifund CCR Partners v Youngman*, 89 AD3d 1377 [4th Dept 2011]; *Matter of Jodel KK*, 189 AD2d 63 [3d Dept 1993]; *O'Connor v Inc. Vil. Of Port Jefferson*, 104 AD2d 861 [2d Dept 1984]

Indeed, not all the exhibits attached to the Thurab Affirmation are even business records including the recorded mortgage and order of reference. Therefore, her attempt at laying a blanket foundation is without merit. Moreover, the referee's report itself, does not state that it was based on any of the specific records other than the Thurab Affirmation.

Therefore, the absence of a proper evidentiary foundation renders Ms. Thurab's "factual assertions based on those records…inadmissible hearsay" *U.S. Bank N.A. v Simpson*, 216 AD3d 1043 [2d Dept 2023]

Third, Ms. Thurab does not attest that the electronic record attached to her affidavit "is a true and accurate representation" of the electronic record. See e.g. *Palisades Collection, LLC v Kedik*, 67 AD3d 1329 [4th Dept 2009]; *Speirs v Not Fade Away Tie Dye Co.*, 236 AD2d 531, 531 [2d Dept 1997]; See also *Federal National Mortgage Association v NB 1168 Realty LLC*, Index No. 18271/2008, NYSCEF Doc. 137 [Sup Ct, Kings County 2024][Neckles J.]

Lastly, Ms. Thurab does not attest that the creation of the records attached to her affidavit or the information contained therein were provided by someone with a business duty to accurately record and enter the relevant information as required by the Court of Appeals. See, e.g., *Matter of Leon RR*, 48 NY2d 117 [1979]; *Bank of New York Mellon v Gordon, supra*; *US Bank Tr. Nat. Ass'n v Freund*, 2026 N.Y. Slip Op. 30595[U] [Sup Ct, Kings County 2026][Walker-Diallo, J.]

Accordingly, for all the above reasons, the Thurab Affirmation and documents attached thereto are inadmissible hearsay and referee's report is not substantially supported by the record. Therefore, the referee's report is rejected.

Finally, plaintiff does not argue or contest that upon rejection of the referees report, it is entitled to an award of only nominal damages and therefore concedes same. See *Wilmington Sav. Fund Socy., FSB v Cuong Vi Cao, supra*; *McNamee Const. Corp. v City of New Rochelle, supra*; See also *Kuehne & Nagel, Inc. v Baiden, supra*; *Firth v State, supra*.

In any case defendant is correct that upon rejection of the referee's report plaintiff is entitled to a judgment only nominal damages for the reasons stated in *U.S. Bank N.A. as Tr. for CMLTI 2007-AR1 v Schwartz*, 2025 NY Slip Op 25271 [Sup Ct Dec. 8, 2025][ Mirocznik, J.]; See also *US Bank Tr. Nat. Ass'n v Freund*, 2026 N.Y. Slip Op. 30595[U] [Sup Ct, Kings County 2026][Walker-Diallo, J.]["As such, this Court joins Judge Mirocznik in the "hopes that the Appellate Division, the Court of Appeals or the legislature will address this important issue from the perspective of judicial economy...This Court likewise experiences a heavy docket of dozens of repetitive, deficient foreclosure motions each week."][2]

Although not claimed by plaintiff, the Court notes that the results herein are not inequitable and are the natural consequence of plaintiff's lack of diligence, careless practice and what must be the equal application of the law.

The maxim is ancient and absolute: equity shadows the law. See *Seif v City of Long Beach*,

---

[2] The Court notes its appreciation that another member of the Judiciary has spoken candidly to the unusual and unwarranted practice of affording a particular class of litigants a procedural indulgence not available to others, and to the corresponding and needless burden imposed on both trial and appellate courts when matters are repeatedly remitted to referees for the submission of additional proof, only for those submissions to prove deficient yet again. The public should also be aware that this Court has, in motion papers and open Court, been subjected to improper attempts at intimidation, and threatened with admonishment and the reassignment of its foreclosure docket if this Court does not rule in the favor of the lending institution. See e.g. *U.S. Bank Trust N.A. v. Mayer*, Index No. 515603/2016 at NYSCEF Doc. 385. Those threats are without consequence. All litigants of Kings County, whom this Court has the honor and pleasure of serving, may rest assured that this Court remains faithful to its oath and will continue to apply the law equally, evenhandedly, and independently. Much like the law, this Court will neither bend nor yield to pressure from lending institutions or their counsel, which remain free to seek whatever relief they believe they are entitled to at the Appellate Division, Second Department located at 45 Monroe Place Brooklyn, NY 11201. See *Bank of New York v Silverberg*, 86 AD3d 274, 283 [2d Dept 2011]["the law must not yield to expediency and the convenience of lending institutions."]

[* 9]

286 NY 382, 387-88 [1941]["this court has given emphatic warning that equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions."]; *Leibowits v Leibowits*, 93 AD2d 535, 546 [2d Dept 1983]["Courts possessed of equitable power no longer inaugurate attacks on legal doctrines; instead, they confine themselves for the most part to the application of substantive and procedural rules established by statute or evolved incrementally by judicial precedent."]; *Armstrong v Exceptional Child Ctr., Inc.*, 575 US 320, 327-28 [2015]["Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law."];

New York courts further follow the foundational principle that "equity aids the vigilant" and that "[e]quity requires that he who would invoke its aid must himself be diligent." *Mikulec v. United States*, 705 F.2d 599, 602 [2d Cir. 1983].

Plaintiff was not vigilant. Plaintiff was not diligent. A court of equity cannot override binding evidentiary rules simply because a powerful party finds the result inconvenient. The evidentiary requirements governing proof of damages in foreclosure proceedings are not bureaucratic technicalities to be brushed aside when a sophisticated institutional lender comes up short. They are the law. Plaintiff had every obligation to know them, meet them, and satisfy them. It did none of these things. No principle of equity rescues a party from the wreckage of its own ineptitude and litigation failures. Nominal damages are not a punishment visited upon Plaintiff by an unkind court. They are the law's measured response to a plaintiff that established a right but refused - or failed - to prove its entitlement to a specific remedy. Whatever prejudice exists here is entirely self-inflicted. Plaintiff was given the opportunity to marshal competent, admissible evidence. It squandered that opportunity. A court does not prejudice a litigant by holding it to its burden - it simply fulfills its most basic function.

Having squandered its first opportunity on its first application, then again, a second time, and now its third in opposition to defendants' cross-motion, plaintiff was provided more than sufficient opportunity to demonstrate its damages. Plaintiff has not requested another attempt and the same would in any case be unwarranted. This Court should not be transformed into a testing ground where an institutional plaintiff flings papers at the Court until something finally sticks. The finality of judgments is not a procedural nicety — it is the bedrock upon which the entire justice system rests. Plaintiff was afforded a full and fair opportunity to prove its case. Repeated remittals for that purpose squander limited judicial resources, delay the resolution of cases, and create the appearance that certain litigants are afforded procedural indulgences unavailable to others. That is an abuse of the judicial process, not a proper exercise of it and this is not what taxpayers are entitled to expect from their courts and is not what they signed up for. That it failed is not this Court's problem to remedy. The rules of evidence — authentication requirements, the business records exception, the best evidence rule — exist for precisely this situation: to prevent large money judgments from being entered on the basis of unreliable, unauthenticated, or otherwise deficient documentation. If Plaintiff's records are inadmissible, there is a reason. Granting a six-figure award on documents the law refuses to credit would not be equity, but its perversion.

Ultimately, the doctrine of nominal damages rests on the premise that a claimant may have established a legal entitlement to relief while failing, when afforded the opportunity to prove the amount claimed with competent and admissible evidence. In that circumstance, the law does not permit the Court to supply what the proof did not. Rather, it limits recovery to nominal damages,

thereby recognizing the right while declining to award sums that were not established with the requisite certainty. Thus, the policy underlying nominal damages expressly contemplates that more may have been recoverable had the claimant made the necessary evidentiary showing when given the chance. Whether the claim is for one hundred dollars or one billion dollars is beside the point. The burden of proof does not diminish or expand with the size of the number asserted. A claimant either proves its damages with competent, admissible evidence or it does not. If it does not, despite having been afforded the opportunity to do so, the court is not obliged to keep reopening the record to permit serial attempts at proof.

Where that opportunity was provided and the proof remained deficient, it is both proper and equitable to award less than was demanded, because the law vindicates proven rights, not speculative amounts. See *Freund v Washington Sq. Press, Inc.*, 34 NY2d 379, 383-84 [1974] ["Since the damages which would have compensated plaintiff for anticipated royalties were not proved with the required certainty, we agree with the dissent in the Appellate Division that nominal damages alone are recoverable...Though these are damages in name only and not at all compensatory, they are nevertheless awarded as a formal vindication of plaintiff's legal right to compensation which has not been given a sufficiently certain monetary valuation."]

The rules of evidence and the consequences of failing to meet one's burden apply with equal force to a pro se litigant and to a trillion-dollar financial institution. A struggling homeowner who failed to submit admissible evidence of damages would receive no equitable reprieve. Neither will Plaintiff in this Court. To create a special, more forgiving regime for institutional creditors — where the stakes are high enough to justify relaxed evidentiary standards — would be an affront to the equal administration of justice. The equal protection guarantees of the Federal and New York Constitutions command that similarly situated litigants be treated alike. A rule that excuses banks from the consequences of evidentiary failure while holding all other plaintiffs to those consequences is not merely bad policy — it is constitutionally suspect. This principle is entirely consistent with the uniform application of other rules that enforce finality without regard to the merits: statutes of limitations extinguish valid claims (see e.g., *Deutsche Bank Natl. Tr. Co. v Flagstar Capital Markets Corp.*, 32 NY3d 139, 151 [2018] [dismissing a claim in excess of $1.4 billion]); denials of new trials stand even when damages were contested; and default judgments are not disturbed simply because a defaulting party believes it had a strong defense. The law does not grade on a curve. Neither will this Court.

Finally, the Court need not reach defendant's alternate contention that this action must be dismissed pursuant to Kings County Uniform Civil Term Rules, Part F, Rule 7

Accordingly, it is hereby

**ORDERED**, that Plaintiff's motion is DENIED and Defendant's cross-motion is GRANTED, and the Referee's Report is rejected. The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any relief requested was not addressed by the Court it is hereby DENIED; and it is further

**ORDERED**, that a Judgment of Foreclosure is executed herewith in favor of Plaintiff, fixing the amount due under the note and mortgage in the nominal amount of $1.00; and it is further

**ORDERED AND ADJUDGED** that Defendant(s), their counsel, and any person or entity with the equity of redemption may redeem the property by the unconditional tender of payment of $1.00 by mail, wire, or other method, to Plaintiff, its counsel of record (McCabe, Weisberg & Conway, LLC), or its current loan servicer (NewRez LLC/Shellpoint Mortgage Servicing) at any time prior to the foreclosure sale, and upon such tender, the consolidated mortgage dated September 29, 2004 and securing a sum of $250,000.00, recorded in the Office of the City Register of the City of New York on October 21, 2004 at CRFN: 2004000652921 and which consolidated mortgage was ultimately assigned to Plaintiff, which, pursuant to this judgment, shall be deemed satisfied, cancelled, and discharged of record· and it is further

**ORDERED AND ADJUDGED,** that the Notices of Pendency [NYSCEF Doc. 3, 32, 73 and 95] be cancelled, and the consolidated mortgage dated September 29, 2004 and securing a sum of $250,000.00, recorded in the Office of the City Register of the City of New York on October 21, 2004 at CRFN: 2004000652921, along with this judgment, be satisfied, cancelled and discharged of record upon the presentation or filing with NYSCEF of a copy of an affirmation attesting to the unconditional tender of payment of $1 by mail, wire or otherwise to Plaintiff, Plaintiff's counsel of record herein (McCabe, Weisberg & Conway, LLC), and/or Plaintiff's servicer (NewRez LLC/Shellpoint Mortgage Servicing), at any time prior to the foreclosure sale, and the Clerk and Office of the City Register shall note each cancellation, satisfaction, and discharge on its records; and it is further

**ORDERED,** that the Office of the City Register is directed to accept and record a certified copy of this Order Judgment, and accept and record a copy of the affirmation attesting to the unconditional tender of payment of $1.00 by mail, wire or otherwise to Plaintiff, Plaintiff's counsel of record herein (McCabe, Weisberg & Conway, LLC), and/or Plaintiff's servicer (NewRez LLC/Shellpoint Mortgage Servicing) against the property known as 470 Malbone Street, Brooklyn, NY 11225, Block 1309, Lot 1065 and to mark the land records accordingly.

The legal description of the mortgaged property referred to herein is annexed hereto as Schedule A.

This constitutes the Decision, Order and Judgment of the Court.

ENTER:

Hon. Menachem M. Mirocznik, JSC

### Schedule A

## Exhibit A

### Legal Description

All that certain plot, piece or parcel of real property situated and being in the County of Kings, Borough of Brooklyn, City and State of New York, known and designated as Unit No. 470-2 in a Declaration of Condominium filed under Article 9-B of
the New York Real Property Law, dated 8/7/95 recorded in the Office of the City Register, Kings County, on 11/29/95 in Real
[...] of Conveyances at Page 2073 covering the property therein described, (hereinafter called the "Declaration") establishing
a plan for condominium ownership of the land and building comprising the Batey Yisroel Condominium (hereinafter called the
"Property") which Unit is also designated as Lot No. 1065 on the floor plan of the buildings, filed in the Office of the City Register, Kings County, on 11/29/95, as Map No. 5186;

Together with an undivided 2.065 percent interest in the common elements of the property described in said
Declaration (hereinafter called the "Common Elements");

Said Unit being known and designated as Section 5 Block 1309 Lot 1065 on the Tax Map of the Borough of Brooklyn, City of
New York, and being a Unit in the land area of the Property in the Borough of Brooklyn, County of Kings, City and State of
New York, and being described as follows:

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings,
City and State of New York, bounded and described as follows:

Beginning at a point on the northerly side of Malbone Street, distant 100 feet westerly from the corner formed by the
intersection of the northerly side of Malbone Street with the westerly side of New York Avenue; of New York Avenue;

Running thence westerly along the northerly side of Malbone Street, 222 feet 1/8 inch to the corner formed by the
intersection of the northerly side of Malbone Street with the northeasterly side of Clove Road;

Thence northwesterly along the northeasterly side of Clove Road, 170 feet 3 inches;

Thence easterly parallel with Malbone Street, 334 feet 6 1/8 inches;

Thence southerly at right angles to Malbone Street, 127 feet 9 1/2 inches to the point or place of Beginning.

Tax Id: 5-1309-1065

For information purposes only - property a/k/a
470 Malbone St
Brooklyn, NY 11225-3200

[* 13]